[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 20 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 21 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 22 
OPINION
Victor Garcia struck Aristeo Gonzalez in the face with the butt of a shotgun, causing Gonzalez to fall, hit his head on the sidewalk and die. Could a jury find Garcia guilty of involuntary manslaughter, rather than second degree murder or voluntary manslaughter, based on Garcia's testimony he hit Gonzalez in an automatic response to Gonzalez's lunge at the shotgun and did not aim for Gonzalez's face and did not intend to kill the man? An unlawful killing during the commission of an inherently dangerous felony, even if unintentional, is at least voluntary manslaughter. Because an assault with a deadly weapon or with a firearm is inherently dangerous, the trial court properly concluded the evidence would not support Garcia's conviction for involuntary manslaughter and, therefore, did not err in declining to instruct the jury on involuntary manslaughter as a lesser included offense of murder. We affirm the judgment, modified only to correct a clerical error as to Garcia's sentence.
 FACTUAL AND PROCEDURAL BACKGROUND
On the morning of March 6, 2005, after arguing with his girlfriend, Cynthia Ramos, Garcia drank a quantity of beer and inexpensive fortified wine. While walking toward Yoly's Market in East Los Angeles to purchase additional wine, Garcia encountered Rafael Barajas and Juan Avila. Garcia, who was holding something shiny in his left hand (a handgun), struck Avila with his right hand near Avila's left eye. Avila fell to the ground, got up and ran to his home. Garcia apparently walked back to Ramos's home, where he again argued with her, and then left, carrying a shotgun.
A short while later Barajas, who had continued to Yoly's Market, saw Garcia enter the store as he was leaving. Garcia was carrying the shotgun. *Page 23 
Garcia testified he entered the store with the shotgun to buy cigarettes, realized there were a lot of people inside and walked back out.
Garcia was confronted by Gonzalez, who told Garcia to put the gun away. Garcia ordered Gonzalez to shut up and to mind his own business. The two men yelled at each other, and Gonzalez moved toward Garcia ("lunged" at him, according to Garcia). Garcia struck Gonzalez with the butt of the shotgun to back him up. Although Garcia testified he did not aim at a specific spot, the gun hit Gonzalez in the face. Gonzalez fell to the sidewalk and hit his head, which began to bleed profusely. Gonzalez subsequently died from craniocerebral injuries due to blunt force head trauma. His skull was fractured on the left side of his head, and he had suffered a "rather large" laceration on his upper lip, apparently where he had been struck by the gun. A postmortem toxicology examination revealed Gonzalez had a 0.31 percent blood-alcohol level at the time of his death.
Barajas saw Gonzalez bleeding on the ground. When he tried to help him, Garcia pointed the shotgun at Barajas's back and asked if he "wanted to be dead as the person who was lying there." Garcia then left the scene. As he walked away, Garcia raised his shotgun and pointed it at Juan Arellano, who had been driving nearby and had slowed down to see if he could provide some assistance.
Garcia was charged in an amended information with the murder of Gonzalez, assault with a firearm and assault with a deadly weapon upon Avila, assault with a firearm on Barajas, assault with a firearm on Arellano and several additional aggravated assault counts identifying as victims two individuals who had encountered Garcia after he left the site of the shooting. Firearm enhancements were also alleged.
The jury found Garcia not guilty of murder but guilty of voluntary manslaughter as to Gonzalez (count 1) and found true the related firearm enhancement. Garcia was also convicted of assault with a firearm on Avila (count 2) and Arellano (count 5) with true findings on the firearm enhancement allegations; he was found not guilty on all other charges. The trial court sentenced Garcia to an aggregate state prison term of 25 years eight months: the upper term of 11 years for voluntary manslaughter plus a consecutive upper term of 10 years for the gun use enhancement, plus consecutive terms of two years four months (one-third the middle term of three years for assault *Page 24 
with a firearm plus one-third the middle term of four years for the firearm-use enhancement) for each of the two aggravated assault counts and their related firearm enhancements.[1]
 CONTENTIONS
Garcia contends the trial court committed prejudicial error in failing to instruct the jury on involuntary manslaughter as a lesser included offense of murder. He also contends the trial court's imposition of the upper term sentence for voluntary manslaughter based on factual determinations made by the trial judge, not the jury, violated his federal constitutional right to a jury trial under Cunningham v.California (2007) 549 U.S. 270 [1166 L.Ed.2d 856, 27 S.Ct. 856] (Cunningham) and Blakely v. Washington (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (Blakely).
 DISCUSSION 1. The Trial Court Properly Denied Garcia's Request to Instruct the Jury Regarding Involuntary Manslaughter As a Lesser Included Offense
a. Standard of review
"Generally, involuntary manslaughter is a lesser offense included within the offense of murder." (People v. Gutierrez (2002) 28 Cal.4th 1083,1145 [124 Cal.Rptr.2d 373, 52 P.3d 572].) Instructions on lesser included offenses must be given when there is substantial evidence for a jury to conclude the defendant is guilty of the lesser offense but not the charged offense. (People v. Breverman (1998) 19 Cal.4th 142, 177 [77 Cal.Rptr.2d 870, 960 P.2d 1094]; People v. Birks (1998) 19 Cal.4th 108,118-119 [77 Cal.Rptr.2d 848, 960 P.2d 1073].) Substantial evidence is defined for this *Page 25 
purpose as "evidence sufficient to `deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." (Peoplev. Barton (1995) 12 Cal.4th 186, 201, fn. 8 [47 Cal.Rptr.2d 569,906 P.2d 531].) "In deciding whether evidence is `substantial' in this context, a court determines only its bare legal sufficiency, not its weight." (Breverman, at p. 177.) The trial court's decision whether or not the substantial evidence test was met is reviewed on appeal under an independent or de novo standard of review. (People v. Waidla (2000)22 Cal.4th 690, 733 [94 Cal.Rptr.2d 396, 996 P.2d 46]; People v. Hayes
(2006) 142 Cal.App.4th 175, 181 [47 Cal.Rptr.3d 695].)
 b. The trial court's instructions on murder and manslaughter
In his statement to the police following his arrest and again when testifying in his own defense at trial, Garcia, who claimed he was intoxicated at the time, explained Gonzalez had lunged toward him and said he thought Gonzalez was going to try to fight him and was concerned Gonzalez would take the gun. Garcia said he "just reacted" and insisted he had jabbed or swung at Gonzalez to back him up. He did not intend to hit Gonzalez in the face and "never intended to kill him or for him to die."
Garcia was charged with second degree murder. The People tried the case on a theory of implied malice; and the trial court instructed the jury, using the appropriate CALJIC jury instruction, that to prove the crime of murder, the People had to establish the killing of Gonzalez was unlawful and "done with malice aforethought," which may be either express or implied. The court defined implied malice in the language of CALJIC No. 8.11, "Malice is implied when: 1. The killing resulted from an intentional act; 2. The natural consequences of the act are dangerous to human life; and 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." The court also explained, "When the killing is the direct result of such an act [one done with implied malice], it is not necessary to prove that the defendant intended that the act would result in the death of a human being." (CALJIC No. 8.31.)
Based upon Garcia's testimony and his theory of how the killing occurred, the trial court also instructed the jury on voluntary manslaughter as a lesser included offense of the charge of murder. Specifically, the court instructed the jury the crime of voluntary manslaughter is the unlawful killing of a human being without malice aforethought but either with an intent to kill or with conscious disregard for human life and gave the CALJIC instructions regarding sudden quarrel or heat of passion (CALJIC Nos. 8.42, 8.43, 8.44), as well as the instructions concerning "imperfect self-defense," a killing done in the *Page 26 
actual but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury (CALJIC Nos. 5.17, 8.50). However, after discussing the issue with counsel, the court refused to instruct on involuntary manslaughter as an additional lesser included offense, reasoning that involuntary manslaughter may be a proper verdict in a case in which the unintentional killing of the victim occurs during the commission of a nondangerous felony (see People v. Burroughs (1984)35 Cal.3d 824, 835-836 [201 Cal.Rptr. 319, 678 P.2d 894] (Burroughs), disapproved on another ground in People v. Blakeley (2000) 23 Cal.4th 82,89 [96 Cal.Rptr.2d 451, 999 P.2d 675]), but not when the victim dies as the direct result of an inherently dangerous felony such as assault with a deadly weapon or assault with a firearm.
 c. An unintentional killing, without malice, during the commission of an inherently dangerous felony does not constitute involuntary manslaughter
Garcia does not challenge the sufficiency of the evidence to support his conviction for voluntary manslaughter. Rather, he argues the jury should have been offered the option of convicting him of involuntary manslaughter instead because there was substantial evidence the killing of Gonzalez was committed without malice and without either an intent to kill or conscious disregard for human life and, therefore, was neither murder nor voluntary manslaughter.
i. The distinction between murder and manslaughter
"California statutes have long separated criminal homicide into two classes, the greater offense murder and the lesser included offense of man-slaughter. The distinguishing feature is that murder includes, but manslaughter lacks, the element of malice." (People v. Rios (2000)23 Cal.4th 450, 460 [97 Cal.Rptr.2d 512, 2 P.3d 1066].)
Murder is the unlawful killing of a human being or a fetus "with malice aforethought." (Pen. Code, § 187, subd. (a); People v. Knoller (2007)41 Cal.4th 139, 151 [59 Cal.Rptr.3d 157, 158 P.3d 731]; People v.Blakeley, supra, 23 Cal.4th at p. 87.)[2] "Express malice" is an unlawful intent to kill. (Pen. Code, § 188; Blakeley, at p. 87 [malice is express "when the defendant manifests `a deliberate intention unlawfully to take away the life of a fellow creature'"].) "Implied malice" requires a defendant's awareness of engaging *Page 27 
in conduct that endangers the life of another. (Knoller, at p. 143.) "Malice is implied when the killing is proximately caused by `"an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life."'" (Ibid.; see Blakeley, at p. 87 ["juries should be instructed that malice is implied `when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life' [citation]"].)
Manslaughter is the "unlawful killing of a human being without malice." (Pen. Code, § 192; see People v. Blakeley, supra, 23 Cal.4th at p. 87.) A defendant who commits an intentional and unlawful killing but who lacks malice is guilty of voluntary manslaughter. (See People v. Breverman,supra, 19 Cal.4th at pp. 153-154; People v. Rios, supra,23 Cal.4th at p. 460,) However, a specific intent to kill is not a necessary element of manslaughter. (Blakeley, at pp. 88-89 [when defendant, acting with conscious disregard for life, unintentionally kills in unreasonable self-defense, killing is voluntary, not involuntary, manslaughter]; People v. Lasko (2000) 23 Cal.4th 101, 108 [96 Cal.Rptr.2d 441, 999 P.2d 666] [when defendant, acting with conscious disregard for life, unintentionally but unlawfully kills in sudden quarrel or heat of passion, killing is voluntary manslaughter].)
The statutory definition of involuntary manslaughter limits the offense, other than for acts committed while driving a vehicle, to the unlawful killing of a human being without malice "in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." (Pen. Code, § 192, subd. (b).) Involuntary manslaughter based on "an unlawful act, not amounting to felony" — a killing resulting from the commission of a misdemeanor — requires proof not only that the defendant acted with general criminal intent but also that the predicate misdemeanor was dangerous to human life under the circumstances of its commission. (People v. Cox (2000) 23 Cal.4th 665, 667,675-676 [97 Cal.Rptr.2d 647, 2 P.3d 1189]; People v. Wells (1996)12 Cal.4th 979, 982 [50 Cal.Rptr.2d 699, 911 P.2d 1374].) Involuntary manslaughter based on the commission of a lawful act that might produce death "without due caution and circumspection" requires proof of criminal negligence — that is, "aggravated, culpable, gross, or reckless" conduct that creates a high risk of death or great bodily injury and that evidences a disregard for human life or indifference to the consequences of the conduct. (People v. Penny (1955) 44 Cal.2d 861, 879 *Page 28 
[285 P.2d 926]; see People v. Evers (1992) 10 Cal.App.4th 588, 596 [12 Cal.Rptr.2d 637].)
 ii. The felony-murder rule, the Ireland merger doctrine and the definition of manslaughter
An unintentional killing, without malice, during the commission of a felony is not murder as defined by Penal Code section 187, subdivision (a), and does not fall within the statutory definition of either voluntary or involuntary manslaughter. What is it?
In most instances, if the felony was inherently dangerous, the defendant could be found guilty of second degree murder under the felony-murder doctrine without proof of implied malice (that is, without proof the defendant acted in conscious disregard for human life): "[A]n unlawful killing in the course of the commission of a felony that is inherently dangerous to human life but is not included among the felonies enumerated in [Penal Code] section 189,[3] constitutes at least murder in the second degree." (People v. Robertson (2004) 34 Cal.4th 156,164 [17 Cal.Rptr.3d 604, 95 P.3d 872]; see People v. Hansen (1994)9 Cal.4th 300, 307-308 [36 Cal.Rptr.2d 609, 885 P.2d 1022]; People v.Ford (1964) 60 Cal.2d. 772, 795 [36 Cal.Rptr. 620, 388 P.2d 892] [unlawful killing in the course of inherently dangerous felony "could not, as a matter of law, have been manslaughter"].) "The second degree felony-murder rule has been part of California law for more than a century and this court has described its function in terms which seem admirably precise: `The [second degree] felony-murder rule operates . . . to posit the existence of malice aforethought in homicides which are the direct causal result of the perpetration or attempted perpetration ofall felonies inherently dangerous to human life. . . .'" (Robertson, at p. 186.)[4] *Page 29 
When, as here, the only underlying, inherently dangerous felony committed by the defendant is an aggravated assault, however, the felony-murder rule does not apply under the merger doctrine first recognized in People v. Ireland (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188,450 P.2d 580]: "To allow such use of the felony-murder rule would effectively preclude the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault — a category which includes the great majority of all homicides. This kind of bootstrapping finds support neither in logic nor in law." (Id. at p. 539; see People v. Hansen, supra,9 Cal.4th at p. 311 ["application of the felony-murder rule to felonious assaults would usurp most of the law of homicide . . ."]; People v.Robertson, supra, 34 Cal.4th at p. 173 ["the merger doctrine forestalls the substitution of proof of an assault for proof of malice out of a concern that, in the great majority of homicide cases, such a substitution would enable the second degree felony-murder rule to supersede the requirement of malice . . ."].) Accordingly, the Ireland
court held a second degree felony-murder instruction could not be given when it is based upon an assault with a deadly weapon that is "an integral part of the homicide" and that is "included in fact within the offense charged." (Ireland, at p. 539; see Robertson, at p. 171 [use of second degree felony-murder rule proper when purpose of predicate felony is "independent of or collateral to an intent to cause injury that would result in death"].)
The Supreme Court in People v. Ireland, supra, 70 Cal.2d 522, did not address whether the defendant could be found guilty of a lesser included offense of murder. In People v. Hansen, supra, 9 Cal.4th at page 312, the court observed that a felonious assault committed without malice aforethought but resulting in death, although not properly the subject of a felony-murder instruction under the Ireland merger doctrine, is "punishable as manslaughter." Unanswered by the Hansen court, however, because unnecessary to the decision in that case, was whether the offense committed was voluntary or involuntary manslaughter.
A killing in the commission of a felony that is not inherently dangerous to human life, in contrast, has been recognized as involuntary manslaughter, notwithstanding the limited statutory definition of the offense, "if that felony is committed without due caution and circumspection." (Burroughs, supra, 35 Cal.3d at p. 835; see People v.Huynh (2002) 99 Cal.App.4th 662, 679 [121 Cal.Rptr.2d 340]; Peoplev. Albritton (1998) 67 Cal.App.4th 647, 654 [79 Cal.Rptr.2d 169].) In Burroughs the Supreme Court reversed the second degree felony-murder conviction of the defendant, whose massage treatment of a young man suffering from leukemia was responsible for the man's death, *Page 30 
holding the unlicensed practice of medicine was not, in the abstract, a felony inherently dangerous to human life. (Burroughs, at pp. 828-833.) However, the court held the evidence would support an instruction on involuntary manslaughter at a retrial, although it recognized "a killing in the course of commission of a noninherently dangerous felony does not appear to be precisely within one of these [statutory] descriptions . . ." of the offense. (Id. at p. 835.) The court explained, "[T]he only rational interpretation of [Penal Code] section 192 is that the Legislature intended felons situated as Burroughs is here to be susceptible to conviction for involuntary manslaughter. `It would be anomalous to hold, although defendant's unlawful act proximately caused the death, that he should bear no criminal responsibility for the homicide.' [Citation.] More anomalous still would be a holding that while one who kills in the course of a lawful act without due caution and circumspection is guilty of involuntary manslaughter, one such as Burroughs, who allegedly commits a homicide while committing a noninherently dangerous felony, is guilty only, perhaps, of a battery." (Id. at pp. 835-836, fn. omitted; accord, People v. Morales (1975)49 Cal.App.3d 134, 144-145 [122 Cal.Rptr. 157] [when conduct resulting in death "constituted a `non-inherently dangerous' felony," defendant may be found guilty of involuntary manslaughter if jury finds act was committed with criminal negligence].) In concluding Burroughs had committed involuntary manslaughter if he was, in fact, responsible for his patient's death, the court summarily dismissed any consideration of voluntary manslaughter because there was no allegation made, or evidence adduced at trial, that Burroughs intended to harm the man. (Burroughs, at p. 834 fn. 8.)
In People v. Rhodes, supra, 215 Cal.App.3d 470, disapproved on another ground in People v. Barton, supra, 12 Cal.4th at page 198, footnote 7, the Third District affirmed the defendant's conviction of second degree murder, rejecting the contention the trial court had erred in failing to instruct sua sponte on involuntary manslaughter. The court explained the reasoning of Burroughs, supra, 35 Cal.3d 824 did not apply when the killing had occurred during the commission of an inherently dangerous felony: "We recognize that in certain circumstances a killing that occurs in the commission of a felony can be involuntary manslaughter, but only when the felony is not inherently dangerous. [Citations.] That rule does not apply here since assault with a deadly weapon is inherently dangerous due to the nature of the weapon or the degree of force." (Rhodes, at p. 476.) In footnote dictum the Rhodes
court observed that, when a defendant kills unintentionally and without malice as the result of an inherently dangerous felony, the unjustified killing "does not fit within any of the statutory definitions of criminal homicide," in *Page 31 
part because "[t]he lack of intent eliminates voluntary manslaughter." (Id. at p. 476, fn. 3.)
Revisiting the issue five years later, the Third District in People v.Cameron (1994) 30 Cal.App.4th 591 [36 Cal.Rptr.2d 656] disavowed the analysis contained in People v. Rhodes, supra,215 Cal.App.3d at page 476, footnote 3 (Cameron, at p. 603)[5] and concluded the view of involuntary manslaughter taken in that case was incorrect: "[I]f a killing is unlawful it must constitute either a murder or manslaughter, the defining boundary being malice; if the homicide is unlawful and malice is lacking the offense is manslaughter. If the offense cannot be voluntary manslaughter, because the case law holds that voluntary manslaughter requires an intent to kill, it is manslaughter nonetheless and, a fortiori, must be involuntary manslaughter." (30 Cal.App.4th at p. 604, fns. omitted.)
Significantly, although acknowledging that then controlling case law held voluntary manslaughter requires an intent to kill, the Cameron court suggested this view was incorrect. (People v. Cameron, supra,30 Cal.App.4th at pp. 604-605, fn. 8.) As it applied to the issue before it — the proper categorization of an unintentional homicide committed without malice as the result of an inherently dangerous felony that was not subject to the second degree felony-murder rule — the court cogently observed, "This well-entrenched doctrine is analytically unfortunate, for an unlawful killing that results from a voluntary battery using force likely to cause great bodily harm but without malice is more sensibly classified, for purposes of culpability, as voluntary manslaughter, regardless of the absence of intent to kill." (Ibid.)
In light of the Supreme Court's holdings in People v. Blakeley, supra,23 Cal.4th 82 and People v. Lasko, supra, 23 Cal.4th 101 that a specific intent to kill is not an element of the crime of voluntary manslaughter, and particularly its express disapproval of the statement in Burroughs,supra, 35 Cal.3d 824, discussed above, that proof of such an intent is required (see Blakeley, at p. 89), we adopt this last portion of theCameron court's analysis, as well as the holding of People v. Rhodes,supra, 215 Cal.App.3d 470, and conclude an unlawful killing during the commission of an inherently dangerous felony, even if unintentional, is at least voluntary manslaughter.
Here, Garcia unquestionably committed an assault with a deadly weapon/firearm on Gonzalez, an inherently dangerous felony, causing *Page 32 
Gonzalez's death. There apparently was no allegation Garcia actually intended to kill Gonzalez. Nonetheless, if the People could prove Garcia had acted with a conscious disregard for Gonzalez's life (implied malice) and had not killed Gonzalez because he was provoked or unreasonably sought to defend himself, Garcia would be guilty of murder. Absent proof of malice — whether because malice was negated by provocation or the doctrine of imperfect self-defense or because of an absence of proof that "the circumstances attending the killing show[ed] an abandoned and malignant heart" (Pen. Code, § 188) — Garcia committed manslaughter, "the unlawful killing of a human being without malice." (Pen. Code, § 192; seePeople v. Rios, supra, 23 Cal.4th at p. 465 ["manslaughter is a killing which, through criminal, lacks the murder element of malice"].) Because Gonzalez's death did not occur in the commission of either a dangerous misdemeanor (see People v. Cox, supra, 23 Cal.4th at p. 676), or a lawful act in an unlawful manner or without due caution and circumspection, it does not fall within the statutory definition of involuntary manslaughter (Pen. Code, § 192, subd. (b)). Although six years before Blakeley andLasko the Supreme Court held in Burroughs, supra, 35 Cal.3d 824, a killing during the commission of a noninherently dangerous felony under similar circumstances is involuntary manslaughter, for purposes of culpability Garcia's killing of Gonzalez is properly classified as voluntary manslaughter, regardless of the absence of intent to kill. (Cf. People v. Anderson (2002) 28 Cal.4th 767, 783 [122 Cal.Rptr.2d 587,50 P.3d 368] [development of doctrine of diminished capacity as form of manslaughter gave effect to statutory definition of manslaughter by recognizing factors other than sudden quarrel or heat of passion may make person incapable of harboring malice and did not constitute improper creation of nonstatutory crime; § 192's "enumeration of non-malicious criminal homicides could not be considered exclusive"].)
Our conclusion the trial court properly declined to instruct on involuntary manslaughter is reinforced by the Supreme Court's decision inPeople v. Benavides (2005) 35 Cal.4th 69, 101-103 [24 Cal.Rptr.3d 507,105 P.3d 1099], a capital case in which the court rejected the defendant's argument the trial court had erred in refusing his request for instructions on voluntary and involuntary manslaughter.[6] The court initially found, in light of *Page 33 
the evidence the victim had been severely beaten and sexually assaulted, there was not substantial support in the record for a reasonable conclusion there existed passion or provocation sufficient to reduce Benavides's culpability from murder to voluntary manslaughter, the only ground on which he asserted the voluntary manslaughter instruction should have been given. (35 Cal.4th at p. 102.) The court then rejected Benavides's contention the evidence could have supported a charge of misdemeanor battery and, therefore, an instruction on involuntary manslaughter on the theory he killed the victim "`"in the commission of an unlawful act, not amounting to [a] felony"`": "[I]n light of [the victim's] vulnerability at the hands of defendant, the secrecy in which the crimes occurred, and the number and severity of injuries inflicted, we cannot find sufficient evidence that [the victim's] assailant engaged in misdemeanor activity, much less that he had committed a lawful act without due caution and circumspection, and that therefore the killing was involuntary manslaughter." (Id. at pp. 102, 103.) Similarly, in light of the undisputed evidence Garcia assaulted Gonzalez with a deadly weapon/firearm, knocking him to the sidewalk where he hit his head and died, there was not sufficient evidence in this case the killing of Gonzalez was involuntary manslaughter. Accordingly, no involuntary manslaughter instruction was required.
 2. Imposition of an Upper Term Sentence Did Not Violate Garcia's Right to a Jury Trial
In sentencing Garcia to the upper term for voluntary manslaughter, as well as to the upper term on the related firearm-use enhancement, the trial court identified a number of aggravating factors: "This crime involved violence and the threat of violence. The victim of the homicide was particularly vulnerable. Mr. Gonzalez was a man who was substantially smaller than the defendant. The defendant himself was visibly a large person. The victim was unarmed and was taken by surprise by the defendant's actions, and I believe that the level of intoxication of the victim exhibited upon the medical examination made him vulnerable. The court also finds as a factor in aggravation defendant has a substantial criminal record that goes back many years, and I do believe that he was on probation at the time of this offense, and obviously his performance on probation was unsatisfactory, having committed this offense while being on probation." The court noted as a factor in mitigation that Garcia did not have a substantial felony record.
Garcia contends the trial court's imposition of the upper term sentence based on factual determinations made by the trial judge, not the jury, violated his federal constitutional right to a jury trial underCunningham, *Page 34 supra, 549 U.S. 270 [127 S.Ct. 856] and Blakely, supra, 542 U.S. 296.[7]
However, as Garcia notes in his reply brief, while this case was pending on appeal, the California Supreme Court decided People v. Black (2007)41 Cal.4th 799 [62 Cal.Rptr.3d 569, 161 P.3d 1130] (Black II), holding the existence of at least one aggravating circumstance established by means that satisfy the governing Sixth Amendment authorities "renders a defendant eligible for the upper term sentence" under the determinate sentencing law, so that "any additional factfinding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to jury trial." (Black II, at p. 812.) "The court's factual findings regarding the existence of additional aggravating circumstances may increase the likelihood that it actually will impose the upper term sentence, but these findings do not themselves further raise the authorized sentence beyond the upper term. No matter how many additional aggravating facts are found by the court, the upper term remains the maximum that may be imposed. Accordingly, judicial factfinding on those additional aggravating circumstances is not unconstitutional." (Id. at p. 815.)
In addition, relying on United States Supreme Court decisions holding the trial court may increase the penalty for a crime based upon the defendant's prior convictions without submitting that question to a jury (see Cunningham, supra, 549 U.S. at pp. 288-289 [127 S.Ct. at p. 868];Blakely, supra, 542 U.S. at p. 301; Almendarez-Torres v. United States
(1998) 523 U.S. 224, 243 [140 L.Ed.2d 350, 118 S.Ct. 1219] ["recidivism . . . is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence"]), the Black II
court held that aggravating factors relating to a defendant's prior convictions are beyond the reach of Cunningham. "As we recognized in [People v.] McGee [(2006) 38 Cal.4th 682 [42 Cal.Rptr.3d 899,133 P.3d 1054]], numerous decisions from other jurisdictions have interpreted the Almendarez-Torres exception to include not only the fact that a prior conviction occurred, but also other related issues that may be determined by examining the records of the prior convictions. . . . [¶] . . . This type of determination is `quite different from the resolution of issues submitted to a jury, and is one more typically and appropriately undertaken by a court.'" (Black II, supra,41 Cal.4th at pp. 819-820, citations fn. omitted.) Accordingly, the defendant's criminal history established an aggravating circumstance under California Rules of Court, rule 4.421(b)(2) — *Page 35 
"`defendant's prior convictions . . . are numerous or of increasing seriousness'" — "that independently satisfies] Sixth Amendment requirements and render[s] him eligible for the upper term." (Black II, at pp. 818, 820.)
As in Black II, Garcia's probation and sentencing report reflected prior adult convictions and sustained juvenile petitions that are sufficiently numerous to satisfy California Rules of Court, rule 4.421(b)(2), and made him eligible for the upper term sentence on the voluntary manslaughter count. (See Black II, supra, 41 Cal.4th at p. 818
[three misdemeanor and two felonies are numerous and of increasing seriousness]; People v. Searle (1989) 213 Cal.App.3d 1091, 1098 [261 Cal.Rptr. 898] [three prior convictions are numerous].) In addition, Garcia was on probation when the crime was committed (Cal. Rules of Court, rule 4.421(b)(4)), an aggravating factor plainly related to recidivism "that may be determined by examining the records of the prior convictions" and is "`typically and appropriately undertaken by a court.'" (Black II, at pp. 819-820; accord, People v. Yim (2007)152 Cal.App.4th 366, 370-371 [60 Cal.Rptr.3d 887].)[8] Based on this additional recidivism-related finding, the court also properly imposed an upper term for the firearm-use enhancement on count 1. "[A]ny additional factfinding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to jury trial." (Black II, at p. 812.)
 DISPOSITION
The judgment is modified to reflect the trial court's imposition of consecutive sentences on counts 2 and 5 of two years four months each (one-third the middle term of three years under Pen. Code, § 245, subd. (a)(2), plus one-third the middle term of four years for the firearm-use enhancement under Pen. Code, § 12022.5), for a total aggregate state prison term of 25 years eight months. The abstract of judgment is ordered corrected to reflect *Page 36 
the proper sentences on counts 2 and 5 and imposition of the firearm-use enhancement on count 1 under section 12022.5 rather than Penal Code section 12022.53, subdivision (b). As modified, the judgment is affirmed. The trial court shall forward a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.
Woods, J., and Zelon, J., concurred.
Appellant's petition for review by the Supreme Court was denied July 23, 2008, S163833. Kennard, J., was of the opinion that the petition should be granted.
[1] With respect to counts 2 and 5, the two aggravated assault counts, the reporter's transcript of the September 15, 2006 sentencing hearing reflects the trial court's imposition of "a total consecutive sentence as to each count of two years and four months." However, the minute order entered after the sentencing hearing incorrectly recites a consecutive sentence of one year on count 2 and one year four months on count 5. As the People note, and Garcia concedes, that error is repeated in the abstract of judgment, which also incorrectly identifies the basis for the 10-year firearm enhancement on count 1 as Penal Code section 12022.53, subdivision (b), rather than Penal Code section 12022.5. We order the correction of these clerical errors. (See People v. Farell (2002)28 Cal.4th 381, 384, fn. 2 [121 Cal.Rptr.2d 603, 48 P.3d 1155] [record of court's oral pronouncement controls over clerk's minute order]; Peoplev. Mitchell (2001) 26 Cal.4th 181, 186-187 [109 Cal.Rptr.2d 303,26 P.3d 1040] [appellate court may correct clerical errors on its own motion or upon application of the parties]; People v. Hong (1998)64 Cal.App.4th 1071, 1075-1081 [76 Cal.Rptr.2d 23] [reporter's transcript controls]; see also People v. Mesa (1975) 14 Cal.3d 466, 471
[121 Cal.Rptr. 473, 535 P.2d 337].)
[2] Second degree murder "is the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder." (People v. Knoller, supra,41 Cal.4th at p. 151.)
[3] A killing in the course of the commission or attempted commission of the felonies listed in Penal Code section 189 is first degree murder.
[4] An inherently dangerous felony for purposes of the second degree felony-murder doctrine "is one which, `by its very nature, . . . cannot be committed without creating a substantial risk that someone will be killed. . . .'" (People v. Hansen, supra, 9 Cal.4th at p. 309; see Peoplev. Robertson, supra, 34 Cal.4th at p. 166.) In determining whether a felony is inherently dangerous to human life, the court considers the elements of the offense in the abstract, not the defendant's specific conduct. (Hansen, at p. 309; see generally People v. Schaefer (2004)118 Cal.App.4th 893, 900-902 [13 Cal.Rptr.3d 442] [whether crime is inherently dangerous felony is question of law for court].) As the trial court correctly observed, assault with a deadly weapon and assault with a firearm, the crimes committed by Garcia resulting in Gonzalez's death, are inherently dangerous felonies. (See Hansen, at p. 312 [discussing felony-murder cases involving assault with a deadly weapon as predicate, inherently dangerous felony]; People v. Rhodes (1989) 215 Cal.App.3d 470,476 fn. 2 [263 Cal.Rptr. 603], disapproved on another ground inPeople v. Barton, supra, 12 Cal.4th at p. 198, fn. 7.) Garcia does not challenge this conclusion.
[5] A Reporter's Note in People v. Cameron, supra,30 Cal.App.4th at page 602, footnote *, explains the decision in Peoplev. Rhodes, supra, 215 Cal.App.3d 470, remained published as the result of a clerical error. (See also Cameron, at p. 606 (cone. opn. of Davis, J.).)
[6] The trial court instructed the jury on two theories of first degree murder: willful, premeditated and deliberate murder and felony murder during the course of rape, sodomy or lewd acts. The court also instructed on second degree murder. (People v. Benavides, supra,35 Cal.4th at p. 101.) The jury found Benavides guilty of first degree murder, finding he had committed the murder under the special circumstances of felony-murder rape, felony-murder sodomy and felony-murder lewd conduct. (Id. at p. 79.) At the penalty phase the jury fixed the punishment for the murder at death, and the trial court rendered judgment accordingly. (Ibid.) The Supreme Court affirmed the judgment in its entirety. (Id. at p. 116.)
[7] In Cunningham, supra, 549 U.S. at page 293 [127 S.Ct. at pp. 870-871], the United States Supreme Court overruled the decision in People v. Black (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740,113 P.3d 534] (Black I) and held California's determinate sentencing law violates a defendant's federal constitutional right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution by authorizing the trial judge to make factual findings that subject a defendant to the possibility of an upper term sentence.
[8] Although the Supreme Court in Black II, supra,41 Cal.4th at pages 819 to 820 held the Almendarez-Torres recidivism exception to the Sixth Amendment right to a jury trial was not to be narrowly construed, the court intends to address in People v. Towne
review granted July 14, 2004, S125677, supplemental briefing ordered February 7, 2007, whether the exception applies to the circumstances described in California Rules of Court, rule 4.421(b)(4) (defendant was on probation or parole when crime was committed) and (b)(5) (defendant's prior performance on probation or parole was unsatisfactory). Even if this second aggravating factor should have been submitted to the jury underCunningham, however, the "denial of the right to a jury trial on aggravating circumstances is reviewed under the harmless error standard set forth in Chapman v. California (1967) 386 U.S. 18 [17 L.Ed.2d 705,87 S.Ct. 824] (Chapman). . . ." (People v. Sandoval (2007) 41 Cal.4th 825,838 [62 Cal.Rptr.3d 588, 161 P.3d 1146].) Based on the record in this case, we are confident a jury would necessarily have found true beyond a reasonable doubt that Garcia was on probation when he killed Gonzalez. *Page 37