Filed 12/18/13 (Opn. following remand from Supreme Court; Ct. of Appeal pub. order 1/14/14 [see last page])

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D057570 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF014495) |
| AMALIA CATHERINE BRYANT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Timothy F. Freer, Judge.  Affirmed.

Anthony J. Dain, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Senior Assistant Attorney General, James H. Flaherty III, and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

Amalia Catherine Bryant killed her boyfriend with a knife. A jury found Byrant not guilty of first degree murder, but guilty of second degree murder (Pen. Code, §§ 187, subd. (a), 189).[1] The jury also found that Bryant personally used a deadly or dangerous weapon within the meaning of section 12022, subdivision (b)(1), in committing the murder. The trial court sentenced Bryant to an aggregate term of 16 years to life in prison.

In her initial briefing on appeal, Bryant claimed that the trial court erred in failing to instruct the jury sua sponte on *involuntary* manslaughter as a lesser included offense of murder, on the theory that she killed unlawfully while committing the misdemeanor offense of brandishing a weapon or performing a lawful act with criminal negligence. After the People filed their respondent's brief, we requested supplemental briefing concerning whether the trial court committed reversible error by not instructing the jury sua sponte that an unintentional killing without malice during the course of an inherently dangerous assaultive felony constitutes *voluntary* manslaughter. (See *People v. Garcia* (2008) 162 Cal.App.4th 18, 31 (*Garcia*) [stating that "an unlawful killing during the commission of an inherently dangerous felony, even if unintentional, is at least *voluntary* manslaughter" (italics added)].) We further instructed the parties to assume that the

---

[1]     Unless otherwise specified, all subsequent statutory references are to the Penal Code.

People were correct that Bryant committed, at a minimum, a felony assault with a deadly weapon.

Bryant filed a supplemental brief in which she argued that the trial court should have instructed the jury on voluntary manslaughter, based on the theory set forth in our request for supplemental briefing, and that the error was prejudicial. The People responded that there was no evidentiary basis for the instruction and, alternatively, that any error in failing to instruct the jury on this theory of voluntary manslaughter was harmless. In our initial opinion in this matter, we reversed Bryant's murder conviction, concluding that "the trial court erred in failing to instruct the jury on the lesser included offense of voluntary manslaughter, based on the theory articulated in *Garcia.*" (*People v. Bryant* (Aug. 9, 2011, D057570), review granted and opn. ordered nonpub. Nov. 16, 2011, S196365.)[2]

The Supreme Court granted the People's petition for review and reversed our judgment. (*People v. Bryant* (2013) 56 Cal.4th 959, 971 (*Bryant*).) The Supreme Court concluded:

---

[2]     We rejected Bryant's claims that the trial court erred in failing to instruct the jury sua sponte on involuntary manslaughter as a lesser included offense of murder on the theory that Bryant killed unlawfully in the commission of misdemeanor brandishing a weapon or in the commission of a lawful act committed with criminal negligence, reasoning that the evidence established that Bryant committed, at a minimum, an assault with a deadly weapon. (*People v. Bryant, supra,* D057570.)

"A defendant who has killed without malice in the commission of an inherently dangerous assaultive felony[3] must have killed without either an intent to kill or a conscious disregard for life. Such a killing cannot be voluntary manslaughter because voluntary manslaughter requires either an intent to kill or a conscious disregard for life. To the extent that [*Garcia, supra*, 162 Cal.App.4th at page 31] suggested otherwise, it is now disapproved.

"Because a killing without malice in the commission of an inherently dangerous assaultive felony is not voluntary manslaughter, the trial court could not have erred in failing to instruct the jury that it was." (*Bryant, supra*, at p. 970.)

The Supreme Court expressly "decline[d] to address [Bryant's] alternative contention that, because assault with a deadly weapon is not an inherently dangerous felony, the trial court erred in failing to instruct the jury on the theory of *involuntary* manslaughter recognized in [*People v. Burroughs* (1984) 35 Cal.3d 824 (*Burroughs*)]." (*Bryant, supra*, 56 Cal.4th at pp. 970-971, italics added.) The *Bryant* court remanded the matter to this court for proceedings consistent with its opinion. (*Id.* at p. 971.)

In a concurring opinion, Justice Kennard concluded that "[b]ecause the defense here presented evidence from which the jury could have reasonably concluded that defendant lacked malice, but killed while committing an assault with a deadly weapon [citation], a jury instruction on *involuntary* manslaughter as a lesser offense necessarily included within the charged crime of murder would have been proper." (*Bryant, supra*, 56 Cal.4th at p. 975 (conc. opn. of Kennard, J.), italics added.) However, Justice Kennard further concluded that the trial court did not have a sua sponte duty to provide

---

3    Elsewhere in its opinion, the Supreme Court stated that "assault with a deadly weapon [is] an offense we assume to be inherently dangerous." (*Bryant, supra*, 56 Cal.4th at p. 966.)

such an instruction in this case because the legal principle on which the instruction would be based "has been so 'obfuscated by infrequent reference and inadequate elucidation' that it cannot be considered a general principle of law." (*Ibid.*, quoting *People v. Flannel* (1979) 25 Cal.3d 668, 681(*Flannel*).)

On remand, Bryant claims that the trial court erred in failing to instruct the jury sua sponte that an unlawful killing committed without malice in the course of an assaultive felony constitutes the crime of *involuntary* manslaughter.[4] In light of Supreme Court authority concerning a trial court's sua sponte instructional duties, we must reject Bryant's contention.

The Supreme Court has repeatedly held that a trial court has no sua sponte duty to instruct on a legal principle that has been "obfuscated by infrequent reference and inadequate elucidation." (*Flannel, supra,* 25 Cal.3d at p. 681; see also *People v. Michaels* (2002) 28 Cal.4th 486, 529 (*Michaels*) [a "trial court . . . has no duty to . . . instruct on doctrines of law that have not been established by authority"].) In this case, it is undisputed that there is no authority holding that an unlawful killing committed without malice in the course of an assaultive felony constitutes the crime of involuntary manslaughter. Thus, even assuming that the jury instruction that Bryant proffers in her

---

4    Our rejection in *People v. Bryant*, *supra*, D057570, of Bryant's argument that the trial court erred in failing to instruct the jury sua sponte on involuntary manslaughter as a lesser included offense of murder on the theory that she killed unlawfully in the commission of misdemeanor brandishing a weapon or in the commission of a lawful act committed with criminal negligence remains valid in the wake of the Supreme Court's reversal of our prior opinion on other grounds. Bryant does not contend otherwise.

briefing on remand is a correct statement of the law, under binding authority, the trial court had no *sua sponte* duty to provide such an instruction in this case.  Accordingly, we affirm the judgment.

## II.

## FACTUAL BACKGROUND[5]

"On November 24, 2005, neighbors responded to the apartment in which defendant lived with her boyfriend Robert Golden to find defendant screaming and Golden lying facedown in the front doorway.  Defendant was pleading with Golden to 'wake up.'  Golden had a stab wound to the chest and no pulse; he was later pronounced dead at the hospital.  During two police interviews and in testimony at trial, defendant recounted [the events that led to Golden's death].  She stated that during a physical altercation, she grabbed a knife from the kitchen and threatened to hurt Golden if he did not let her leave.  Golden lunged for the knife, and the two struggled over it.  Defendant broke free with the knife in her hand.  When Golden [advanced] toward defendant, she made a thrusting motion at him with the knife, and it went into his chest.  Defendant claimed that she never intended to kill Golden.

"The trial court instructed the jury on first degree premeditated murder, second degree murder, and voluntary manslaughter based upon heat of passion and unreasonable self-defense, as well as the defense of reasonable self-defense. The jury convicted defendant of second degree murder and found true the allegation that she personally used

5    Our factual background is taken from the Supreme Court's opinion in this matter. (*Bryant, supra,* 56 Cal.4th at pp. 963-964.)

a deadly weapon.  The trial court sentenced defendant to 15 years to life in prison for murder, plus a consecutive year for the weapon enhancement." (*Bryant*, *supra*, 56 Cal.4th at pp. 963-964.)

III.

DISCUSSION

*The trial court did not err in failing to instruct the jury sua sponte that an unlawful killing committed without malice in the course of an assaultive felony constitutes the crime of involuntary manslaughter*

Bryant claims that the trial court erred in failing to instruct the jury sua sponte that an unlawful killing committed without malice in the course of an assaultive felony constitutes the crime of involuntary manslaughter.

A.    *The People's contention that this court should not address Bryant's claim is without merit*

The People maintain that this court should not consider Bryant's jury instruction claim on remand, and offer two reasons in support of this contention.  First, the People maintain that Bryant's claim is not within the scope of the Supreme Court's remand.  In support of this argument, the People contend that Bryant raised the same claim in the Supreme Court, and the Supreme Court declined to consider the claim and remanded the matter to this court "for further proceedings consistent" with its opinion. (*Bryant, supra*, 56 Cal.4th at p. 971.)  We are not persuaded.  Our considering on remand an issue *not* addressed by the Supreme Court is not inconsistent with the Supreme Court's opinion. Accordingly, we conclude that Bryant's claim is not outside the scope of the Supreme Court's remand.

7

The People also contend that Bryant is presenting this claim for the first time on remand, and that in doing so, she is "engaging in piecemeal litigation that is prejudicial to the People." We agree that Bryant did not offer this theory of instructional error[6] in her initial briefing on appeal, but we exercise our discretion to consider her claim, notwithstanding any possible forfeiture, for the following reasons. First, at the time Bryant filed her initial briefing on appeal, the Court of Appeal in *Garcia* had concluded both that "[a]n unintentional killing, without malice, during the commission of an inherently dangerous felony does *not* constitute involuntary manslaughter" (*Garcia*, *supra*, 162 Cal.App.4th at p. 26, italics altered) and that "an unlawful killing during the commission of an inherently dangerous felony, even if unintentional, is at least voluntary manslaughter." (*Id*. at p. 31.) However, in *Bryant*, our Supreme Court disapproved *Garcia* to the extent that it suggests that "[a] defendant who has killed without malice in the commission of an inherently dangerous assaultive felony" has committed *voluntary* manslaughter. (*Bryant, supra*, 56 Cal.4th at p. 970.) Further, in her concurring opinion in *Bryant*, Justice Kennard expressly stated that "an assault with a deadly weapon [can] constitute an unlawful act that makes a killing occurring during the assault *involuntary* manslaughter." (*Bryant, supra*, at p. 971 (conc. opn. of Kennard, J.).) Justice Kennard also observed that although the issue is not "a ground on which [the Supreme Court] granted review," it is an issue "closely connected to the facts of this case." (*Ibid*.) We

---

6      Bryant did contend in her initial briefing on appeal that the trial court erred in failing to instruct the jury sua sponte on involuntary manslaughter, albeit for reasons different from those that she asserts on remand from the Supreme Court. (See fns. 2 and 4, *ante*.)

8

conclude that there has thus been a material change in the law, warranting our exercise of discretion to consider Bryant's claim, despite her failure to present this argument in her initial briefing on appeal.

With respect to the People's contention that Bryant has engaged in "piecemeal litigation," we note that the position that the *People* took in the Supreme Court in this matter is directly contrary to the position they previously advocated in their opposition to Bryant's appeal in this court. As noted previously, after the initial briefing on appeal in this court was complete, we asked the parties to submit supplemental letter briefs addressing the following question: "Did the trial court commit reversible error by not instructing the jury sua sponte that an unintentional killing without malice during the course of an inherently dangerous assaultive felony constitutes voluntary manslaughter? (See [*Garcia, supra*, 162 Cal.App.4th 18].)"

In their response to our request, the People *conceded* the existence of such a sua sponte duty, stating in their supplemental letter brief, "[T]he trial court [had] a sua sponte duty to instruct on the *Garcia* theory of voluntary manslaughter if there were substantial evidence that appellant did not subjectively appreciate that her conduct endangered [Robert's] life." Notwithstanding their concession in this court of the existence of a trial court's sua sponte duty to instruct on the *Garcia* theory of voluntary manslaughter, where factually supported, the People argued in the Supreme Court that "the *Garcia* [court] did not articulate an additional theory of manslaughter" and that this court "adopted the *Garcia* theory of voluntary manslaughter as if [by] divine writ . . . ."

9

Accordingly, in light of the material change in the law, the significant change in the People's litigation posture, and the People's failure to demonstrate any actual prejudice caused by Bryant's failure to raise this claim in her initial briefing on appeal, we exercise our discretion to consider Bryant's claim that the trial court erred in failing to instruct the jury sua sponte that an unlawful killing committed without malice in the course of an assaultive felony constitutes the crime of involuntary manslaughter, notwithstanding her failure to raise this claim in her initial briefing on appeal.

B.      *The trial court did not have a sua sponte duty to instruct on Bryant's novel theory of involuntary manslaughter*

  1.      *A trial court has no duty to instruct on a legal principle that has been so "obfuscated by infrequent reference and inadequate elucidation" that it cannot be considered a general principle of law  (Flannel, supra, 25 Cal.3d at p. 681.)*

In *Flannel*, *supra*, 25 Cal.3d 668, the court considered whether a "[trial] court erred in failing to instruct the jury sua sponte that defendant's honest but unreasonable belief that he must defend himself from deadly attack negates malice so that the offense is reduced from murder to manslaughter." (*Id*. at p. 672.)  The *Flannel* court acknowledged that "decisions, including those of this court, recognize, albeit without full discussion, that one who holds an honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury does not harbor malice and commits no greater offense than manslaughter." (*Ibid*.)  The *Flannel* court further observed "it has been legal doctrine, even though infrequently applied in the past, that a genuine but unreasonably held belief negates the mental state of malice aforethought that is necessary for a murder conviction." (*Id*. at p. 682.)

10

Despite the existence of such doctrinal underpinnings, the *Flannel* court held that the trial court in that case had no sua sponte duty to instruct the jury on the law of imperfect self-defense.  (*Flannel*, *supra*, 25 Cal.3d at p. 682.)  The *Flannel* court reasoned:

> "[A] trial court's duty to instruct sua sponte on this defense[7] arises only in a case in which the evidence presents issues relevant to 'general principles of law.'  When a rule applies so seldom that courts have found no occasion to give it full, substantive discussion and California Jury Instructions, Criminal (CALJIC) has not set it out as a standard instruction, we decline to proclaim that, heretofore, the rule expressed a general principle.  We conclude that the court did not err in failing to instruct of its own motion."  (*Id*. at p. 672.)

The Supreme Court explained its holding that a trial court has no sua sponte duty to instruct on novel legal theories, stating that such theories have not received sufficient elucidation to constitute a "general principle[] of law."  (*Flannel*, *supra*, 25 Cal.3d at p. 681.)  The *Flannel* court reasoned:

> "[T]he sua sponte 'rule seems undoubtedly designed to promote the ends of justice by providing some judicial safeguards for defendants from the possible vagaries of ineptness of counsel under the adversary system.  Yet the trial court cannot be required to anticipate every possible theory that may fit the facts of the case before it and instruct the jury accordingly.  The judge need not fill in every time a litigant or his counsel fails to discover an abstruse but possible theory of the facts.'  [Citation.]  Given the undeveloped state of the unreasonable belief rule, we cannot impose upon the instant trial court so formidable a duty as to conceive and concoct an instruction

---

7      In *People v. Barton* (1995) 12 Cal.4th 186, 200, the Supreme Court explained that " 'unreasonable self-defense' is . . . not a true defense; rather, it is a shorthand description of one form of voluntary manslaughter."

11

embodying that rule. 'The duty of the trial court involves percipience—not omniscience.' [Citations.]"[8] (*Id*. at p. 683.)

Similarly, in *Michaels, supra,* 28 Cal.4th 486, the Supreme Court concluded that a trial court did not have a sua sponte duty to instruct on "unreasonable or imperfect defense of others" (*id*. at p. 529), because a "trial court . . . has no duty to so instruct on doctrines of law that have not been established by authority." (*Ibid*.) In reaching this conclusion, the *Michaels* court applied *Flannel* and its progeny:

> "*Flannel* held that a trial court was not required to instruct on imperfect self-defense until that defense was recognized by California decisions. ([*Flannel, supra,* 25 Cal.3d at pp. 680–683].) Applying the same analysis, courts have refused to require a trial court to instruct on its own motion that an unreasonable belief one is acting under duress is a partial defense to robbery (*People v. Bacigalupo* (1991) 1 Cal.4th 103, 125–126 (*Bacigalupo I*)); that imperfect self-defense is a defense to the crime of torture (*People v. Vital* (1996) 45 Cal.App.4th 441, 446); or that imperfect self-defense is a defense to the crime of mayhem (*People v. Sekona* (1994) 27 Cal.App.4th 443, 451).
>
> "This reasoning governs here. At the time of defendant's trial, the concept of imperfect defense of others was not a commonly known and established defense. We acknowledge that this concept follows logically from the interplay between statutory and decisional law. . . . But the trial court here was not required to so instruct on its own motion, because the doctrine of imperfect or unreasonable self-defense was not a well-established legal doctrine under California law." (*Michaels, supra,* 28 Cal.4th at p. 530.)

In sum, the Supreme Court has repeatedly held that a legal concept that has been referred to only infrequently, and then with " 'inadequate elucidation,' " cannot be

---

[8]     Although the *Flannel* court concluded that the trial court did not have a sua sponte duty to instruct the jury in that case concerning the doctrine of imperfect self-defense, the *Flannel* court stated that in all *subsequent* cases, trial courts would have such duty. (*Flannel*, *supra*, 25 Cal.3d at p. 683.)

considered a general principle of law requiring a sua sponte jury instruction. (*Flannel*, *supra*, 25 Cal.3d at p. 681; accord *In re Christian S.* (1994) 7 Cal.4th 768, 774 ["We observed in [*Flannel, supra,* 25 Cal.3d at page 681] that the doctrine [of imperfect self-defense] had been 'obfuscated by infrequent reference and inadequate elucidation' and thus, before the trial in that case, had not become a general principle of law requiring a sua sponte instruction"].)

2.      *The trial court had no sua sponte duty to instruct the jury that an unlawful killing committed without malice in the course of an assaultive felony constitutes the crime of involuntary manslaughter*

In her supplemental brief on remand, Bryant offers two theories in support of her contention that the trial court erred in failing to instruct the jury sua sponte that an unlawful killing committed without malice in the course of an assaultive felony constitutes the crime of involuntary manslaughter. First, she argues that such an instruction was required pursuant to *Burroughs, supra*, 35 Cal.3d 824. In *Burroughs*, the Supreme Court stated, "[A]n unintentional homicide committed in the course of a noninherently dangerous felony may properly support a conviction of involuntary manslaughter, if that felony is committed without due caution and circumspection." (*Id.* at p. 835.) Second, Bryant argues that because manslaughter functions as a " 'catch-all' concept," which includes "all unlawful homicides that do not amount to murder . . . this Court should conclude that an unlawful killing without malice in the course of a felony assault with a deadly weapon is necessarily involuntary manslaughter . . . ."

Bryant does not dispute that there is no authority holding that an unlawful killing committed without malice in the course of an assaultive felony constitutes the crime of

13

involuntary manslaughter, pursuant to either theory.[9]  In light of the lack of authority in support of either theory of involuntary manslaughter, it is clear that pursuant to the Supreme Court law cited above, the trial court did not have a sua sponte duty to instruct the jury that an unlawful killing committed without malice in the course of an assaultive felony constitutes the crime of involuntary manslaughter.[10]  (See e.g., *Michaels*, *supra*, 28 Cal.4th at p. 529 ["trial court . . . has no duty to instruct on doctrines of law that have not been established by authority"]; accord *Flannel*, *supra*, 25 Cal.3d at p. 682.)[11]

IV.

---

[9]  Bryant expressly acknowledges that "there appears to be no currently valid published case which addresses the issue of whether the crime of assault with a deadly weapon is a felony inherently dangerous to life."  Bryant also does not cite any case in which a court has relied on the "catch-all" nature of manslaughter to conclude that an unlawful killing committed without malice in the course of an assaultive felony constitutes the crime of involuntary manslaughter.

[10]  In her concurring opinion in *Bryant*, Justice Kennard persuasively articulates why such an instruction is a proper statement of the law.  (*Bryant, supra*, 56 Cal.4th at pp. 971-975 (conc. opn. of Kennard, J.).) However, we need not expressly decide whether such an instruction is or is not a proper statement of the law, because even assuming that Justice Kennard's view is correct, there was no sua sponte duty to instruct in this case, for the reasons stated in the text.  (See *Bryant, supra*, 56 Cal.4th at p. 975 (conc. opn. of Kennard, J.) [stating that while "a jury instruction on involuntary manslaughter as a lesser offense necessarily included within the charged crime of murder would have been proper," the trial court had no sua sponte duty to provide such an instruction, citing *Flannel*].)

[11]  Bryant's supplemental brief contains a single sentence in which she argues, "[T]o the extent a request for such an instruction from trial counsel was required . . . appellant received the ineffective assistance of counsel."  Bryant did not present this claim in her initial briefing on appeal, and she has not adequately briefed the issue of ineffective assistance of counsel in her supplemental briefing on remand.  Accordingly, we deem Bryant's claim of ineffective of assistance of counsel forfeited for purposes of this appeal, and decline to consider the merits of that claim.

14

DISPOSITION

The judgment is affirmed.

_____
AARON, J.

WE CONCUR:

_____
NARES, Acting P. J.

_____
McINTYRE, J.

15

AARON, J. concurring:

While Bryant's claim fails in light of the Supreme Court authority discussed in the majority opinion, I write separately to express my disagreement with the "inadequate elucidation" doctrine (*People v. Flannel* (1979) 25 Cal.3d 668, 681) and to urge that it be reconsidered. In my view, a trial court's obligation to instruct sua sponte should turn not upon the frequency with which a principle appears in case law, but rather, upon the clarity of the legal principle involved and whether that principle applies to a given set of facts. (Cf. *People v. Sedeno* (1974) 10 Cal.3d 703, 715 [" 'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' [Citation.]"].)

To conclude otherwise allows the possibility that a defendant may stand convicted of an offense merely because the facts of the defendant's case do not fall within well-established doctrine, even if the law does not support the conviction. The fact that no court has previously articulated the validity of the defendant's appellate claim is not a sufficient reason to deny that defendant a new trial at which the jury is properly instructed. Most fundamentally, case law to the effect that a defendant is entitled only to jury instructions that are rooted in "well-established legal doctrine" (*People v. Michaels* (2002) 28 Cal.4th 486, 530) represents, in my view, an unwarranted departure from the ordinary rule that decisions that "explain or refine the holding of a prior case, those which

apply an existing precedent to a different fact situation, even if the result may be said to 'extend' the precedent, or those which draw a conclusion that was clearly implied in or anticipated by previous opinions," apply *fully* to a defendant's case on appeal. (*People v. Guerra* (1984) 37 Cal.3d 385, 399; see e.g., *Correa v. Superior Court* (2002) 27 Cal.4th 444, 463, fn. 5 ["Our holding is applicable to defendant's case and applies fully retroactively, as is the norm for judicial decisions"].)

Courts ordinarily apply even a *change* in the law on direct appeal, regardless of whether the trial court could have reasonably been expected to have anticipated such a change. (See, e.g., *People v. Carter* (2005) 36 Cal.4th 1114, 1144 ["the general rule [is] that judicial decisions, even those overruling prior authority, have full retroactive effect"].) For example, if a trial court, relying on past Supreme Court precedents, instructs on an offense, that trial court is deemed to have erred if the Supreme Court overrules those precedents on appeal. (*People v. Chun* (2009) 45 Cal.4th 1172, 1200-1201 (*Chun*).) In *Chun*, the court stated:

> "We overrule *People v. Robertson* [(2004)] 34 Cal.4th 156, and the reasoning, although not the result, of *People v. Randle* [(2005)] 35 Cal.4th 987. This conclusion means the trial court erred in this case in instructing the jury on the second degree felony-murder rule." (*Chun, supra*, at p. 1201.)

In a footnote following this quotation, the *Chun* court explained that the trial court in that case had erred, even though the court had correctly applied the law as it existed at the time of trial:

> "When we say the trial court erred, we mean, of course, only in light of our reconsideration of past precedents. As of the time of trial, . . . ample authority supported the trial court's decision to

2

instruct on felony murder."  (*Chun, supra,* 45 Cal.4th at p. 1201, fn. 8.)

I agree that, where warranted by an evolution in the law, a trial court may be reversed for instructional error even if the trial court correctly applied binding precedent in giving the instruction in question.  If this is the case, then a trial court should be held to have committed reversible error for failing to instruct in accordance with the logical evolution of the law, where there is *no* controlling authority to the contrary.  In short, the principal rationale that the Supreme Court has provided—the unfairness of requiring a trial court to anticipate developments in the law (*Flannel, supra*, 25 Cal.3d at p. 683)—is, in my view, an insufficient justification for creating an exception to the ordinary rule that "a trial court must instruct on the general principles of law governing the case, i.e., those principles relevant to the issues raised by the evidence."  (*Id*. at pp. 680-681.)

A court commits error where it acts contrary to a higher court's articulation of the law, even if such error is understandable given the state of the law at the time the lower court acted.  (See, e.g., *Chun, supra,* 45 Cal.4th at pp. 1200-1201; *People v. Hendrix* (2013) 214 Cal.App.4th 216, 239 ["We conclude that the trial court's legal analysis here was erroneous.  The error is understandable because this case presents a significantly different context for the application of the decisional law related to [Evidence Code] section 1101, subdivision (b)"]; *People v. Torres* (2005) 127 Cal.App.4th 1391, 1400-1401 ["As modified, the instruction thus required defendant to meet the burden of proving he was incapable of distinguishing right from both legal and moral wrong at the time he committed the crimes.  This was error.  [¶ ]The trial court's

3

focus on moral wrong was understandable in light of case law on the matter"].)  I see no reason to employ a different rule with respect to the asserted instructional error of the type at issue in this case.

In sum, in my view, the novelty of application of a legal principle is not a sufficient basis upon which to conclude that a defendant should be deprived of the benefit of otherwise legally correct instruction on the applicable law.  I would urge the Supreme Court to reconsider this aspect of *Flannel* and its progeny, while recognizing that, in the interim, this court remains bound by such precedent.

AARON, J.

4

Filed 1/13/14

OPINION ON REMAND FROM THE CALIFORNIA SUPREME COURT

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>AMALIA CATHERINE BRYANT,<br><br>   Defendant and Appellant. | D057570<br><br><br><br>(Super. Ct. No. SWF014495)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

The opinion filed on December 18, 2013, is ordered certified for publication.

———————————————————

NARES, Acting P. J.

5