Filed 6/26/13  P. v. Lemusu CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TASI LEMUSU,<br><br>    Defendant and Appellant. | B241619<br><br>(Los Angeles County<br>Super. Ct. No. NA 090108) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard R. Romero, Judge.  Affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Marc Kohm and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

A jury found appellant Tasi Lemusu not guilty of first degree murder, but guilty of second degree murder. (Pen. Code,[1] §§ 187, subd. (a), 189.) The jury also found that appellant used a deadly and sharp weapon within the meaning of section 12022, subdivision (b)(1). On appeal, appellant challenges his conviction arguing that the court prejudicially erred in instructing the jury. We find no error and affirm.

## FACTS AND PROCEDURE

### 1. Prosecution Evidence

Danny Logan was killed outside a homeless camp under a bridge in Long Beach. "Rah Rah" and his girlfriend "Crazy" lived in the camp and, about 11:00 p.m. on September 12, 2011, started to argue.[2] Rah Rah threw a rock at Crazy's tent and threatened to attack her. Logan, a fellow resident of the camp, exited his tent and told the couple to keep their voices down. Rah Rah told Logan to mind his own business and the two argued and shoved each other. Logan knocked Rah Rah to the ground several times, and Logan dragged Rah Rah on the ground a few feet. Rah Rah then hit Logan on the top of the shoulder with a large metal flashlight.

At that point, appellant jumped off of the wall where he had been sitting, approached Logan and Rah Rah, and stabbed Logan with a sharp object. Logan fled with appellant and Rah Rah in pursuit. Logan eventually collapsed on the shoulder of a nearby freeway. Two police officers who found Logan reported that he said he had been stabbed under the nearby bridge but did not know who had stabbed him. Logan died the next day from a punctured lung.

The medical examiner who performed the autopsy on Logan determined that he had methamphetamine and marijuana in his system, but that the methamphetamine level was "pretty low."

---

[1]     All further references are to the Penal Code.

[2]     Testimony did not reveal Rah Rah's or Crazy's given names. Thus we refer to them by their nicknames.

2

## 2. *Defense Evidence*

Appellant did not testify.  A defense expert determined from toxicology reports that Logan was under the influence of methamphetamine at the time of the incident.  As a result, Logan was likely aggravated, irritable, and unable to think rationally.  The presence of drugs in his body also increased the likelihood that he would act in a violent manner.

## 3. *Procedural History*

The prosecution tried the case on alternative theories of express or implied malice.  The trial court instructed the jury on these theories.  The court also found sufficient evidence to instruct the jury on the lesser included offense of voluntary manslaughter.  To that end, the court gave the jury instructions regarding heat of passion voluntary manslaughter and imperfect self-defense voluntary manslaughter.  (CALCRIM Nos. 570, 571.)  In line with the defense theory, the trial court instructed the jury on self-defense and defense of another.  (CALCRIM No. 505.)  As noted, appellant was convicted by a jury of second degree murder with a sharp weapon enhancement.  He was sentenced to state prison for 16 years to life.

## DISCUSSION

Murder is the unlawful killing of a human being with malice aforethought. (§ 187.)  All murders that are not of the first degree are of the second degree.  (§ 189.) Second degree murder requires a mental state of express or implied malice.  (*People v. Knoller* (2007) 41 Cal.4th 139, 151.)  Express malice is an intent to kill.  (*People v. Gonzalez* (2012) 54 Cal.4th 643, 653.)  Malice is implied when a person willfully commits an act, the natural and probable consequences of which are dangerous to human life, and the person knowingly acts with conscious disregard for life.  (*Ibid.*)

Manslaughter is a lesser included offense of murder.  (§ 192; *People v. Thomas* (2012) 53 Cal.4th 771, 813.)  A defendant commits voluntary manslaughter when a homicide that otherwise appears to have been committed with express or implied malice, and thus would constitute murder, is nevertheless mitigated and reduced to manslaughter. (*People v. Bryant* (June 3, 2013, S196365) __ Cal.4th __ [2013 Lexis 4695, 13-14].)  Our

3

Supreme Court has described intentional killings committed in two ways -- as a result of a heat of passion or in unreasonable self-defense -- as "negating" the malice required for murder. (*People v. Milward* (2011) 52 Cal.4th 580, 587; *People v. Rios* (2000) 23 Cal.4th 450, 467.)

## 1. The Trial Court Was Not Required to Give an Additional Instruction on Voluntary Manslaughter

Citing *People v. Garcia* (2008) 162 Cal.App.4th 18 (*Garcia*), appellant contends that the trial court had a duty to sua sponte instruct the jury on a novel theory of voluntary manslaughter. According to appellant, the *Garcia* court found that an unintentional killing committed during an inherently dangerous assaultive felony constitutes voluntary manslaughter. As we explain, subsequent to the filing of appellant's appeal, our Supreme Court, which we are required to follow, rejected appellant's argument.

As relevant here, the high court held in *People v. Bryant, supra*, 2013 Lexis 4695, 20, that the trial court had no sua sponte duty to instruct the jury on a voluntary manslaughter theory other than that of heat of passion and imperfect self-defense. The facts in *Bryant* were similar to those of the instant case. The killing in *Bryant* was committed via stabbing, an inherently dangerous assaultive felony. (2013 Lexis 4695, 2.) The defendant and her boyfriend were fighting in their apartment when she broke free and stabbed him as he came toward her. (*Ibid*.) As in this case, the trial court in *Bryant* instructed the jury regarding murder, voluntary manslaughter based on heat of passion or imperfect self-defense, and self-defense. (2013 Lexis 4695, 3].) The Court of Appeal reversed the conviction, holding that "the trial court erred in failing to instruct the jury on the lesser included offense of voluntary manslaughter, based on the theory articulated by the court in *Garcia*." (*People v. Bryant* (Aug. 9, 2011, D057570) [nonpub. opn.].)

The California Supreme Court reversed the Court of Appeal, stating that "[a] defendant who has killed without malice in the commission of an inherently dangerous assaultive felony must have killed without either an intent to kill or a conscious disregard for life. Such a killing cannot be voluntary manslaughter because voluntary manslaughter requires either an intent to kill or a conscious disregard for life." (*People v.*

4

*Bryant, supra*, 2013 Lexis 4695, 19].) The *Bryant* court disapproved *Garcia* to the extent that it suggested a third theory of voluntary manslaughter was viable. (2013 Lexis 4695, 19-20].) Our high court held that "[b]ecause a killing without malice in the commission of an inherently dangerous assaultive felony is not voluntary manslaughter, the trial court could not have erred in failing to instruct the jury that it was." (2013 Lexis 4695, 20].) Applying that holding here, the trial court did not err in failing to instruct the jury that an unintentional killing committed without malice aforethought during an inherently dangerous assaultive felony constitutes voluntary manslaughter.

### 2. The Trial Court Properly Instructed the Jury on Voluntary Manslaughter

Appellant argues that the court was required to instruct the jury that a killing committed with implied malice could "constitute voluntary manslaughter if such occurred . . . during a sudden quarrel or heat of passion." Appellant's argument is not persuasive because the jury was given the very instruction he claims should have been given. Specifically the jury was instructed that "[a] killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed someone because of a sudden quarrel or in the heat of passion." Thus, the instructions informed the jury that the crime was reduced to voluntary manslaughter if it occurred during a sudden quarrel or in the heat of passion.

Appellant prefers the instruction on voluntary manslaughter in CALJIC No. 8.40 to the one given in this case.[3] The court however was not required to use the CALJIC instruction. (*People v. Genovese* (2008) 168 Cal.App.4th 817, 832.) Although the instruction given was not identical to CALJIC No. 8.40, it properly instructed the jury on voluntary manslaughter. (*Genovese*, at p. 832.)

Finally, appellant argues that the court was required to describe implied malice within the voluntary manslaughter instruction itself. Appellant recognizes that the court

---

[3] CALJIC No. 8.40 provides that "[e]very person who unlawfully kills another human being without malice aforethought but either with an intent to kill, or with conscious disregard for human life, is guilty of voluntary manslaughter . . . ." (Brackets omitted.)

instructed the jury on implied malice. Specifically, the court instructed the jury as follows: "The defendant acted with implied malice if: [¶] 1. He intentionally committed an act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4. He deliberately acted with conscious disregard for human life." (CALCRIM No. 520.) Appellant's argument lacks merit because jury instructions must be considered as a whole and as appellant acknowledges jurors were instructed on implied malice. (See *People v. Rivas* (2013) 214 Cal.App.4th 1410, 1429 [instructions must be considered as a whole].) Appellant has demonstrated no instructional error and no cumulative error.[4]

## DISPOSITION

The judgment is affirmed.



FLIER, J.

WE CONCUR:



RUBIN, Acting P. J.



GRIMES, J.

---

[4] We need not consider appellant's claim of ineffective assistance of counsel because appellant has not shown counsel should have objected to the instructions as given.