Filed 10/3/14  P. v. Mendoza CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

|  |  |
|---|---|
| THE PEOPLE, | C069250 |
| Plaintiff and Respondent, | (Super. Ct. No. 072872) |
| v. | |
| IGNACIO MENDOZA, | |
| Defendant and Appellant. | |

A jury convicted defendant Ignacio Mendoza of first degree murder (Pen. Code,[1] §§ 187, subd. (a), 189), found true an attempted kidnapping special circumstance (§ 190.2, subd. (a)(17)), and found true an allegation that he intentionally and personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)). Defendant was sentenced to state prison for consecutive indeterminate terms of life without the possibility of parole plus 25 years to life.

---

[1] Undesignated statutory references are to the Penal Code in effect at the time of defendant's crimes.

1

Defendant contends, and the Attorney General concedes, the trial court erred when it failed to instruct the jurors with CALCRIM No. 731 on the elements of the attempted kidnapping special circumstance and imposed a parole revocation restitution fine. Defendant further contends the trial court erred when it failed to instruct the jurors on the lesser offenses of attempted false imprisonment and involuntary manslaughter grounded on the theory that the killing was committed during the commission of false imprisonment, a noninherently dangerous felony.

We conclude that the trial court's failure to instruct the jury on the elements of the attempted kidnapping special circumstance was harmless. We further conclude that the trial court did not err when it did not give attempted false imprisonment as a lesser included offense because attempted kidnapping was not charged as a separate offense. Nor did the trial court err by not instructing on involuntary manslaughter as a lesser included offense grounded on a noninherently dangerous felony theory, and even if it did, any error was harmless. We modify the judgment regarding the parole revocation restitution fine and affirm the judgment as modified.

## FACTUAL AND PROCEDURAL HISTORY

### Prosecution Evidence

On the afternoon of May 26, 2007, Yolo County Sheriff's Deputy Chris Whitehead responded to a reported assault at an almond orchard in Zamora. When he arrived, he found several farm personnel standing over the body of a female, who was lying in the orchard. She was not moving and was unresponsive.

The victim was identified as Guadalupe Benitez. Benitez was part of a crew that was pruning almond trees. She had started work at 7:00 a.m. Defendant arrived shortly before 3:00 p.m., driving his car into the orchard in reverse. Defendant had identified himself to members of the crew as Benitez's husband.

Defendant drove directly to Benitez and the two argued as defendant drove along side of her. The foreman of the work crew could not hear all that was said but did hear

2

defendant tell Benitez to get in the car. Benitez said she did not want to go. After defendant got stuck in the mud, the foreman told defendant to leave the orchard. Defendant moved his car out of the mud and left. The foreperson told Benitez if she wanted to go, that would be fine and she said she wanted to continue working.

After defendant left the orchard, he returned to the County Road that ran alongside the orchard, where he drove back and forth, forward and in reverse. His speed was approximately five to 10 miles per hour.

At some later point, defendant drove back into the orchard and got out of the car. When he got out of the car he immediately pointed a shotgun at Benitez and again demanded that Benitez get into the car. The crew member nearest to Benitez walked over and urged defendant to calm down. Defendant paid the crew member no attention.

According to the crew member, defendant told Benitez to get in the car three times. Benitez told defendant she was not going to go with him. The crew member testified that after the third time defendant told Benitez to get in the car, she told defendant, "if he was going to kill her, just kill her right then." Defendant fired the shotgun into Benitez's chest. Another crew member testified that defendant told Benitez to go with him or come with him, and she said she was not going. Then, just before she was shot, Benitez told defendant, "If you are going to kill me, kill me here."[2]

Without saying anything, defendant got back into his car and immediately drove away. The crew foreman telephoned 911.

According to one of the crew members, defendant was only three to four feet away from Benitez when he fired the shotgun into her chest. The parties stipulated that Benitez

---

**2** There appears to have been some confusion about the appropriate translation of the Spanish word "aquie" in this context. The person interpreting for defendant indicated the word should be translated "here." The interpreter who translated for the witnesses initially indicated that the word could reference time or space-"now" or "here"-- interchangeably, but then agreed the translation should be "here."

3

was killed on May 26, 2007, by a shotgun blast inflicted at close range that severed her aorta as well as penetrating her heart, lungs, and spine.

Benitez's son, G.F., who was 17 at the time of trial, testified that he "wasn't really surprised," in that he "could have seen" his father doing this sort of thing to his mother. G.F. testified that he had seen his parents arguing in the past and that defendant had been violent to his mother on multiple occasions. Defendant had threatened violence to Benitez's family if she left him. G.F. testified that on one occasion, defendant forced his way into the family home and threatened his mother with a knife. Defendant tried to talk to Benitez, but she would not talk to him because "it was too much already." The police were called, but defendant left before they arrived. G.F. said this event took place around the time of the murder, but he was not sure when.

G.F. also testified that on the morning of the murder, defendant appeared at the house unannounced, tearfully hugged both children, told them that he loved them, and then left. This "confused" both G.F. and his sibling. Neither child could understand what was going on. G.F. had seen defendant cry before, but G.F. found this "unusual because he just came out of nowhere . . . I didn't know any reason for him to be crying or anything."

Yolo County investigators obtained a warrant for defendant's arrest after the murder. However, it was determined that defendant had fled to Mexico, so procedures were implemented to extradite him. Defendant was not returned to Yolo County custody until 2010.

**Defense Evidence**

An investigator for the district attorney's office testified that she interviewed G.F. in December 2010. G.F. told the investigator that he had never seen his father hit his mother.

Defendant did not testify.

4

## DISCUSSION

### I. Instruction on the Attempted Kidnapping Special Circumstance Allegation

Defendant contends, and the Attorney General concedes, the trial court erred when it failed to instruct the jurors with CALCRIM No. 731, the elements of the attempted kidnapping special circumstance.[3] Defendant acknowledges that much of CALCRIM No. 731 mirrors the felony murder instructions, CALCRIM Nos. 521 and 549, but points out that one element required for the special circumstance is missing--the element of intent to kill. Defendant contends that omission of CALCRIM No. 731 was prejudicial because the intent to kill element is in that instruction. (See fn. 3, *ante*.) Defendant reasons that, because the case was tried on alternative theories of premeditated murder and felony murder, the jury was not required to find intent to kill Benitez under any instruction.

---

[3]      CALCRIM No. 731 (2006-2007) stated in relevant part:
"The defendant is charged with the special circumstance of intentional murder while engaged in the commission of kidnapping.
"To prove that this special circumstance is true, the People must prove that:
"1.  The defendant (committed [or attempted to commit] . . . ) kidnapping;
"2.  The defendant (intended to commit . . .) kidnapping; [¶] . . . [¶]
"(3/4).  (The defendant . . . ) did an act that was a substantial factor in causing the death of another person;
"(4/5).  *The defendant intended that the other person be killed*;
"[AND]
"(5/6).  The act causing the death and the kidnapping [or attempted kidnapping] were part of one continuous transaction; [¶] . . . [¶]
"AND (6/7).  There was a logical connection between the act causing the death and the kidnapping [or attempted kidnapping]. The connection between the fatal act and the kidnapping [or attempted kidnapping] must involve more than just their occurrence at the same time and place.] [¶] . . . [¶]
"[If all the listed elements are proved, you may find this special circumstance true even if the defendant intended solely to commit murder and the commission of kidnapping was merely part of or incidental to the commission of that murder.]" (Italics added.)

We conclude the error was harmless.

## A.  Standard of Review

Defendant acknowledges that instructional error is harmless "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error."  (*Neder v. United States* (1999) 527 U.S. 1, 17 [144 L.Ed.2d 35, 52] (*Neder*); accord, *People v. Mil* (2012) 53 Cal.4th 400, 417-419 [omission of *two* elements from robbery special circumstance instruction related to an aider and abettor was subject to harmless error analysis under the *Neder* test].)  In such circumstances, the error does not contribute to the verdict obtained.  (*Neder, supra,* 527 U.S. at p. 17; *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711].)

Thus, according to *Neder*, we must engage in a two-part inquiry:  (1) Was the element on which the trial court failed to instruct contested and (2) was proof of that element supported by overwhelming evidence?

## B.  Uncontested Element of Intent to Kill

While the element of deliberation and premeditation was contested, the element of intent to kill was not.  We look to defense counsel's closing argument to determine whether an element was contested.  Based on our reading of defense counsel's closing argument, we conclude that the defense conceded the issue of defendant's intent to kill.

Defense counsel began her argument by telling the jurors they were "presented with two choices.  You are presented with a choice of first-degree murder and you're presented with a choice of second-degree murder.  [¶]  Of course, there is a third choice that the prosecutor didn't touch on, and I'm not going to touch upon either, and that is for a full acquittal of all these charges."

Defense counsel next said, "This was a killing borne by emotional upheaval and passion, *not with a desire or intent to kill his wife*."  (Italics added.)  At first blush, this argument appears inconsistent with a concession that the killing was intentional.

However, we look at this statement in the context of the entire argument and the murder theories upon which the jury was instructed.

There were only two theories of second degree murder in this case, implied and express malice. After saying the jury had a choice between first and second degree murder, defense counsel never argued the murder was committed with implied malice. Defense counsel's comments, instead, appear intended to negate the elements of *deliberation and premeditation* required for first degree murder, as opposed to the intent to kill that, absent implied malice, is required for second degree murder.

Defense counsel went on to tell the jury, "a *decision to kill* made rashly, impulsively, or without careful consideration is not deliberate and premeditated; it's second degree." (Italics added.) Counsel then argued that someone premeditating murder does not plan to commit the act in front of several witnesses; nor does one announce his presence to a person he had met a couple weeks previously, i.e., by arriving in his own license-plate-adorned car and then driving in and out of the orchard. Rather, "that is all consistent with a killing that is rash, impulsive, and without contemplation."

Defense counsel next argued that, when defendant ordered Benitez into the car, he never made a threat to kill her. "[W]e didn't hear, get in the car or I'm going to kill you." Counsel then argued "[t]here's no additional language offered that would suggest that there was *an intent to kill*." (Italics added.) Again, in the context of the entire argument, the italicized words appear to refer to the lack of pre-existing intent or design at the time of the attempted kidnapping; the argument does not suggest an absence of intent to kill at the moment defendant shot Benitez in the chest.

Defense counsel's conflating of intent to kill with deliberation and premeditation is revealed more plainly in her comments regarding G.F.'s opinion that defendant was capable of committing the murder. Counsel remarked: "So the argument that somehow this opinion from the 13-year-old, now 17 somehow supports a premeditated, willful state of mind is illogical because we don't have enough facts to say that there was some sort of

7

intent to kill *expressed at an earlier date*. [¶] The interpretation of that particular opinion could fall either way; towards a premeditated, deliberate, willful murder or to a killing, a type of murder that is done rashly and impulsively without contemplation." (Italics added.)

At the end of the closing argument, defense counsel remarked: "What you have here is an argument and a tragic killing and facts that are sufficient to support a murder in the second degree." Again, after having said the choice was between first and second degree murder, defense counsel never sought to distinguish express and implied malice, never even mentioned implied malice and never suggested the facts supported a theory of conscious disregard for human life, while somehow *insufficient* to support a theory of intent to kill. Moreover, on this record, there was no basis to argue that although defendant knew that shooting was "dangerous to human life," and he "deliberately acted with conscious disregard for human life," he somehow *did not intend* to kill. Instead, defense counsel effectively conceded the issue of defendant's intent to kill and focused on the elements of deliberation and premeditation.

We conclude the element of intent to kill was "uncontested" within the meaning of *Neder*.

Citing *People v. Lasko* (2000) 23 Cal.4th 101, 108-110 (*Lasko*) and his request for a voluntary manslaughter instruction[4] in his reply brief, defendant contends for the first time that his trial theory was that he fired the gun in the heat of passion "*and did not intend to kill his wife*." (Italics added.) However, defendant fails to cite to anything in the record that supports this belated claim.

Our high court in *Lasko* held that a killer who, acting with conscious disregard for life and knowing that the conduct endangers another, *unintentionally* kills in a sudden

---

[4] The trial court refused the defense request to instruct the jury on voluntary manslaughter because there was no evidence of provocation by Benitez.

quarrel or heat of passion (provocation) is guilty of voluntary manslaughter.  (*Lasko, supra,* 23 Cal.4th at p. 104.)  In this case, the lack of evidence of provocation meant the *Lasko* theory of voluntary manslaughter did not apply.  And in any event, as we have noted, there is simply no evidence here that defendant fired the weapon in conscious disregard for life as opposed to an intent to kill.

### C.  Overwhelming Evidence of Intent to Kill

The element of intent to kill was "supported by overwhelming evidence" within the meaning of *Neder*.  The evidence showed a history of domestic discord, including verbal threats and brandishing a weapon.  Defendant's odd behavior with the children the morning of the shooting, when considered in light of his later conduct, supports the strong inference that he had resigned himself to take drastic action and did not think he would see the children again.  He went looking for Benitez with a loaded shotgun.  Undisputed evidence showed that defendant fired the shotgun at Benitez at close range after she invited him to kill her right there in the orchard because she was not going to leave with him.  Indeed, the specific words she used were, "If you are going to kill me, kill me here." Defendant then did just that.  He killed her right where she stood.  No evidence suggested the gun discharged accidentally.  Indeed, in finding true the firearm enhancement, the jury necessarily concluded that defendant intentionally and personally discharged the shotgun.  (§ 12022.53, subd. (d).)  No evidence suggested that he fired the gun simply in *conscious disregard* that discharging the gun under such circumstances was dangerous to human life.  On this record, the evidence that defendant intended to kill Benitez was overwhelming.  (*Neder, supra,* 527 U.S. at p. 17 [144 L.Ed.2d at p. 52].)

### D.  Conclusion

We conclude beyond a reasonable doubt that the omitted intent element was uncontested and supported by overwhelming evidence.  (See *People v. Mil*, *supra*, 53 Cal.4th at p. 417.)  Thus, the omission of CALCRIM No. 731 and the intent to kill element from the instructions was harmless beyond a reasonable doubt.  (*Neder, supra,*

9

527 U.S. at p. 17; *Chapman v. California, supra,* 386 U.S. at p. 24 [17 L.Ed.2d at pp. 710-711].)

## II.  Lesser Included Offenses

Defendant contends the trial court erred when it failed to instruct the jury sua sponte on (1) attempted false imprisonment as a lesser included offense of attempted kidnapping, and (2) involuntary manslaughter as a lesser included offense of murder.

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence.  [Citations.]  The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.]  That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)

### A.  False Imprisonment as a Lesser Included Offense

Defendant was not charged with the substantive offense of kidnapping or attempted kidnapping.  Rather, he was charged with the special circumstance of murder in the commission of a felony, kidnapping or attempted kidnapping.  The special circumstance is akin to a sentencing enhancement and, as such, does not contain "lesser included offenses."  As our high court has noted, such enhancements are not to be considered in the determination of lesser included offenses to the murder charge.  (*People v. Wolcott* (1983) 34 Cal.3d 92, 100-101 (*Wolcott*).)

*Wolcott* was followed in *People v. Miller* (1994) 28 Cal.App.4th 522, in which a jury convicted the defendant of first degree murder and found true a robbery-murder special circumstance.  (*Id*. at p. 524.)  The defendant appealed contending the trial court had erred by denying his request for an instruction on grand theft person as a lesser

included offense of robbery. (*Id*. at p. 525.) The court rejected the argument, explaining that the defendant had been "charged only with murder, not robbery. The robbery special-circumstance allegation had no effect on what offenses were included in the murder charge [citing *Wolcott*] nor did reliance on a felony-murder theory. The included offense doctrine applies only to charged offenses. (§ 1159.) Appellant was not charged with robbery and--notwithstanding the robbery special-circumstance allegation and prosecution reliance upon a robbery-murder theory--could not have been convicted of robbery. Accordingly, because grand theft person is not a lesser included offense of murder, the trial court had no sua sponte duty to instruct on grand theft person." (*Id*. at p. 526; fn. omitted.)

Thus, evidence that defendant was attempting to falsely imprison Benitez, rather than kidnap her, in that he did not intend to transport her a substantial distance,[5] would not entitle him to an instruction on attempted false imprisonment. Rather, if the jury found the evidence of intent to move the victim a substantial distance lacking, the jury would have returned a not true finding on the attempted kidnapping special circumstance.

## B. Involuntary Manslaughter

At trial, defendant requested instructions on voluntary manslaughter on a heat of passion theory and second degree felony murder as lesser included offenses. Those requests were denied by the trial court.

---

**5**    The trial court appropriately instructed the jury that "[*Substantial distance* means more than a slight or trivial distance. In deciding whether the distance was substantial, you must consider all the circumstances relating to the movement. Thus, in addition to considering the actual distance moved, you may also consider other factors such as whether the movement increased the risk of [physical or psychological] harm, increased the danger of a foreseeable escape attempt, or gave the attacker a greater opportunity to commit additional crimes, or decreased the likelihood of detection.]" (CALCRIM No. 1215; see *People v. Martinez* (1999) 20 Cal.4th 225, 235-237.)

On appeal, defendant contends that the trial court had a sua sponte duty to instruct the jury on involuntary manslaughter on the theory that defendant committed a killing during the commission of a noninherently dangerous felony, namely attempted false imprisonment. A killing committed in the commission of a noninherently-dangerous felony without due caution and circumspection is a form of involuntary manslaughter. (*People v. Burroughs* (1984) 35 Cal.3d 824, 835; *People v. Garcia* (2008) 162 Cal.App.4th 18, 29, reversed on other grounds in *People v. Bryant* (2013) 56 Cal.4th 959, 970 .) Involuntary manslaughter is a lesser included offense of murder. (*People v. Ochoa* (1998) 19 Cal.4th 353, 422.) False imprisonment is not an inherently dangerous felony. (*People v. Henderson* (1977) 19 Cal.3d 86, 92-96.)

Defendant claims he was entitled to the involuntary manslaughter instruction because "the trial court had a sua sponte duty to instruct on attempted false imprisonment as a lesser offense to attempted kidnapping. Once that obligation arose, the court had the concomitant duty to instruct jurors that a killing committed in the course of an attempted false imprisonment, rather than in the course of an attempted kidnapping, constitutes involuntary manslaughter." Essentially, defendant contends there was sufficient evidence to warrant a finding that defendant killed the victim in the commission of an attempted false imprisonment instead of attempted kidnapping and thus, the jury should have been given the lesser included offense of involuntary manslaughter to consider. Defendant complains, "No evidence was developed explaining why he wanted her to get into his car. The mere fact that he was driving when he confronted her does not show he intended to move her a substantial distance, because she was working in the fields--he had to drive there to confront her."

12

We disagree that there was no evidence indicating defendant wanted to move the victim a substantial distance.[6]  Quite the contrary, we conclude there was no evidence supporting a conclusion that he did not intend to move the victim anywhere.

During the first encounter in the orchard, defendant was overheard telling Benitez to get into the car.  While the crew foreperson could not hear all that was said, he heard Benitez tell defendant she did not want to *go*.  When the crew foreperson offered to allow Benitez to *go*, she said she wanted to stay.  When defendant came back, one of the crew members heard him order Benitez to *come with* or *go with* him.  Another heard defendant order Benitez to get into the car and heard Benitez reply she was *not going with him*.  After the defendant demanded that Benitez get in the car for the third time, Benitez said, "If you are going to kill me, kill me *here*."  (Italics added.)  All of this evidence shows defendant had indicated to Benitez that he wanted her to go with him and she did not want to leave.  There was simply no evidence that defendant intended to have a conversation with Benitez in the car parked there in the orchard, as defendant implies.  Indeed, defendant had been earlier told to take the car out of the orchard.

Even assuming for argument sake that the trial court should have instructed on involuntary manslaughter on a noninherently dangerous felony theory, any error is harmless.  As we have said, the evidence of intent to kill was overwhelming.  Also, the evidence that the murder was committed with deliberation and premeditation was equally compelling.  And the evidence overwhelmingly supported the attempted kidnapping elements of the special circumstance allegation.

---

**6**      See footnote 5, *ante*.

13

### III. Parole Revocation Restitution Fine

Defendant contends, and the Attorney General concedes, the trial court erred when it imposed and suspended an unauthorized parole revocation restitution fine. (§ 1202.45.) We agree.

Defendant was sentenced to state prison for life without the possibility of parole. The consecutive indeterminate term of 25 years to life for the enhancement does not authorize the parole revocation restitution fine. (*People v. McWhorter* (2009) 47 Cal.4th 318, 380; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505-506; *People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1184–1185; cf. *People v. Brasure* (2008) 42 Cal.4th 1037, 1075.) We modify the judgment accordingly.

### DISPOSITION

The judgment is modified by striking the section 1202.45 parole revocation restitution fine. As so modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.


                                        MURRAY          , J.



We concur:



    RAYE           , P. J.



    ROBIE          , J.


14